

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSEMARY HIGBEE, | ) |
| Plaintiff, | ) No. 06 C 928 |
| v. | ) |
| | ) Hon. Mark Filip |
| LEONIDAS MALLERIS, ALICE MALLERIS, and MALLERIS and MALLERIS, LTD., a Professional Corporation, | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER
### GRANTING MOTION FOR REMAND TO STATE COURT

Plaintiff, Rosemary Higbee ("Plaintiff" or "Higbee"), sued defendants, Leonidas Malleris, Alice Malleris, and Malleris & Malleris, Ltd. (collectively, "Defendants"), in the Circuit Court of Cook County for attorney malpractice. Defendants filed a notice of removal, and Plaintiff moved for remand to state court. For the reasons stated below, Plaintiff's motion to remand (D.E. 15) is granted.

### BACKGROUND

The professional malpractice action in this case stems from alleged inadequacies of the Defendants—a lawfirm located in Inverness, Illinois, and the two attorneys who seemingly comprise it—during portions of an underlying federal employment case that was litigated in the Northern District of Illinois. The Plaintiff in both actions was Rosemary Higbee of Barrington, Illinois, who proceeds in the instant case *pro se*.

The initial underlying employment suit was filed in federal court in 1997. *See generally Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 995 (7th Cir. 2001) ("*Higbee I*"). In that suit, Higbee

accused her former employer, Sentry Insurance Company (also "Sentry"), of sexual harassment, age discrimination (Higbee was sixty when the employment suit was first filed), and retaliatory discharge. *Id.* During the course of that litigation, Higbee went through a long list of attorneys. *Id.* at 1000. Higbee's first two attorneys each withdrew, and her third then moved before the district court to "withdraw his appearance on behalf of Higbee due to what he said were irreconcilable differences with her." *Id.* at 995-96.

On the day that motion was noticed, the district court held an impromptu settlement conference, at which at least the general contours of a settlement in principle were reached. *Id.* at 996. The district court dismissed the employment case with prejudice, and the district court also denied the motion of the third counsel to withdraw. *Id.*

The parties, as well as Ms. Higbee's then-counsel (who was eventually succeeded by various other counsel, including eventually those who are now the Defendants in this malpractice action), thereafter engaged in various discussions about the settlement documentation. *Id.* The parties discussed, *inter alia*, the scope of the release, the provision to Higbee of a psychological report prepared by Sentry's expert, and the scope of a non-disparagement clause. *Id.* It appears as though Sentry orally agreed to all of the modifications proposed by Higbee and her counsel, and Sentry forwarded a signed copy of a revised settlement agreement to Higbee's then-counsel. *Id.* at 997. (Again, that counsel was different from the present Defendants; there was at least one intervening attorney representing Higbee in the underlying litigation before the eventual trial, the counsel in which trial Higbee has now sued for malpractice.) Higbee refused to sign the settlement agreement, averring that it was unacceptable. *Id.* At that point, Higbee's then-counsel resigned. *Id.*

2

Higbee obtained new counsel and filed a Rule 60(b) motion under Fed. R. Civ. P. 60. *Id.* The district court eventually held a hearing and denied the Rule 60(b) motion after making findings of fact and issuing conclusions of law. *Id.* The district court held that the material terms of the settlement were reached at the prior judicial settlement conference. *Id.*

On appeal, the Seventh Circuit reversed. *Id.* at 1000. The Seventh Circuit found that at least some terms of the settlement were unresolved, and therefore no agreement had been reached. *Id.* at 998. The Seventh Circuit also found that, although Sentry's counsel had signed a seeming settlement agreement concerning the employment suit that incorporated the changes requested by Higbee's counsel, it was not clear that her counsel had authority to settle the suit. *Id.* at 999-1000. The Seventh Circuit reversed and remanded, with Circuit Rule 36 applying on remand. *Id.* at 1000.

Judge Kennelly received the case after the remand. In the course of subsequent proceedings, he granted in part and denied in part a summary judgment motion of Sentry. *See* D.E. 92 in Case No. 97 C 1349. In the course of the ruling, Judge Kennelly denied summary judgment on the sexual harassment claim because Sentry's own employees testified that the putative sexual harasser had the authority to affect Higbee's work assignments (*e.g., id.* at 7; *see also id.* at 2, 3), and therefore the putative harasser could be found to possess the authority to directly affect the terms and conditions of Higbee's employment. *Id.* at 7 (citing *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002)). The district court also made clear that the putative harasser adamantly denied that he had groped Ms. Higbee's breasts on three occasions in the two years prior to her termination, as she alleged. *See* D.E. 92 in Case No. 97 C 1349, at 2-3. Judge Kennelly also denied the motion for summary judgment on the Age Discrimination claim (*id.* at

3

8), and he granted the motion for summary judgment on the retaliation claim (*id.* at 10).

The case eventually proceeded to a jury trial before Judge Kennelly. *See generally Higbee v. Sentry Ins. Co*, 440 F.3d 408 (7th Cir. 2006) ("*Higbee II*"). At the conclusion of the trial, the "jury found for Sentry Insurance on Rosemary Higbee's claims of sexual harassment and age discrimination." *Id.* at 408.

On appeal, the Seventh Circuit affirmed the judgment below. *Id.* The basis of the appeal was Higbee's contention—assumed *arguendo* to be correct for purposes of the appeal—that Higbee would have "fared better" if the trial court had not given a jury instruction which reflected the Seventh Circuit's then (at the time of the trial) and current (at the time of this opinion) extant definition of a "supervisor" in the employment context. *See id.* (citing *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004); *Hall v. Bodine Elev. Co.*, 276 F.3d 345, 355 (7th Cir. 2002); and *Perkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998)); *accord Patton v. Keystone RV Co.*, 455 F.3d 812, 814 n.2 (7th Cir. 2006) (post-*Higbee II* opinion citing *Rhodes*, 359 F.3d at 506, and *Perkins*, 163 F.3d at 1034, regarding the applicable standard for "supervisor"). In *Higbee II*, a unanimous panel of the Seventh Circuit noted that while "there has been some dissatisfaction expressed with our definition of supervisor"—*id.*, 440 F.3d at 409 (citing *Rhodes*, 359 F.3d at 510 (Rovner, J., concurring) (suggesting that a reexamination of the Seventh Circuit's articulated criteria for identifying supervisors might be appropriate))—Plaintiff had not objected to the giving of the extant Seventh Circuit law at trial, and there was no plain error in the giving of such an instruction. *Id.*, 440 F.3d at 409-10.

It is *arguably* ambiguous in the Seventh Circuit opinion whether the panel again reaffirmed the standard Seventh Circuit law—in that, when conducting "plain error" review

4

under Fed. R. Civ. P. 51(d)(2), the *Higbee II* court stated that, "[w]hat we have here is no error at all. The district court properly applied the law of the Seventh Circuit in instructing the jury, law which remains in force today." *Id.* at 409. However, a prior portion of the opinion stated that the panel need not resolve whether any retooling of the "supervisor" definition was necessary or appropriate. *Id.* This Court will resolve the issue for present purposes in Ms. Higbee's favor (*i.e.*, by assuming that the Seventh Circuit did not expressly and substantively reject her invitation to revisit Seventh Circuit precedent in this area). That assumption assists Higbee (in that, without it, her malpractice suit is a non-starter), but it does not affect this Court's assessment of the propriety of remand, for the reasons explained at length in the next section of this opinion.

In January 2006, Higbee filed suit against Leonidas Malleris, Alice Malleris, and Malleris & Malleris, Ltd., in the Circuit Court of Cook County. (D.E. 1, Ex. A.) (It appears that Higbee had at least five sets of attorneys in the underlying employment discrimination case; the Mr. and Ms. Malleris and their firm were the last of this set in the district court, although different counsel subsequently represented Higbee in the Court of Appeals.) The suit is one for professional negligence under Illinois common law, there being no federal attorney malpractice statute or cause of action for malpractice provided in Title VII or the ADEA. (*Id.*, Ex. A at 3 (Higbee alleging that, "[a]s a direct and proximate result of one or more of the negligent acts or omissions set forth above, and but for those acts or omissions, plaintiff would have prevailed in her [employment discrimination] action against Sentry"); *see also, e.g., id.* at 2 (Defendants stating that "this is a legal malpractice case").) The alleged "negligent acts or omissions" highlighted by Higbee included inadequate trial preparations (*id.*, Ex. A at 2); "fail[ure] to

5

introduce evidence which was readily available" and that would have supported Higbee's claim that the putative harasser was, as a matter of law, Higbee's supervisor (*id.*, Ex. A at 3); and the failure to object to the giving of a jury instruction concerning the definition of "supervisor" that tracked extant Seventh Circuit law (*id.*, Ex. A at 2-3).

Defendants filed a notice of removal in this Court. (D.E. 1.) Defendants contend in the notice of removal that because "almost all of the issues in this case are federal question issues," the case was properly removed to federal court. (*Id.* at 2.)

Higbee filed a motion to remand, which makes clear that Higbee is suing under an Illinois common law cause of action (D.E. 15 at 2) and which contends that, at most, Defendants have identified a defense that will raise an issue of federal law, and that removal therefore was inappropriate. (*Id.* at 2-3.) Defendants filed a reply which asserts, *inter alia*, that "whether or not the complaint explicitly so states," the real question is whether the Defendants "<u>did not follow federal statutory law as interpreted through Seventh Circuit case law</u>" in connection with the underlying federal employment discrimination case. (D.E. 18 at 1 (underlining in Defendants' filing).) As a result, Defendants assert, removal was appropriate. Defendants add that "the instant action [also] should remain in the District Court for reasons of judicial economy and efficiency." (*Id.* at 2; *see also id.* at 2-3 (Defendants stating that, "Defendants removed it [*i.e.*, the case] to federal court primarily for reasons of judicial economy and expediency, since requiring the assigned judge in the Circuit Court of Cook County to undergo the significant burden of examining and applying the applicable federal law in order to preside over this case is an unnecessary exercise; thus, while the Defendants can proceed, just as easily, with this case in either forum, for all of the reasons set forth herein, Defendants respectfully submit that Plaintiff's

motion for remand should be denied.").) In her reply brief (D.E. 20 at 2), Plaintiff cites *Custer v. Sweeney* 89 F.3d 1156 (4th Cir. 1996), in which the Fourth Circuit remanded an attorney malpractice action relating to an underlying federal ERISA suit, where the underlying malpractice action concerned the provision of professional advice concerning the ERISA statute. *See, e.g., id.* at 1167.

The Court has considered the record and the applicable caselaw. After such review, the Court respectfully grants the Plaintiff's motion to remand her malpractice case to state court, as there is an extensive body of federal caselaw supporting such a result.

## ANALYSIS

I.  Defendants, As The Parties Seeking To Invoke Federal Jurisdiction, Bear The Burden of Showing The Propriety of Such Jurisdiction

Defendants, as the parties seeking to invoke federal jurisdiction, bear the burden of showing that federal jurisdiction is appropriate. *See, e.g., Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911(7th Cir. 1993) (teaching that "[a]ny doubt regarding jurisdiction should be resolved in favor of the states, *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976), and the burden of establishing federal jurisdiction falls on the party seeking removal. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921)."); *see also Custer*, 89 F.3d at 1167 (collecting extensive appellate authority and stating that professional malpractice law and its parameters are matters within "a traditional exercise of state authority."). The Seventh Circuit has further instructed that "[c]ourts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Id.* (citing *Illinois v. Kerr-McGee Chemical Corp.*, 677 F.2d 571, 576 (7th Cir.1982)).

7

With regard to remand, the Supreme Court has instructed that, under its longstanding interpretation of the law, the question whether a claim "arises under" federal law must be determined by reference to the well-pleaded complaint. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). This same rule applies in the remand context. *Id.*

II.     Substantial Federal Caselaw Supports Remand of Plaintiff's Case to State Court

The briefing concerning the remand question, with all respect, has been terse. Defendants cite virtually no authority, and Plaintiff does not cite extensive authority either, so the Court has attempted to survey applicable caselaw. That survey directs remand of the case.

The parties cite only two centrally relevant cases (among the few cited at all). In the first, *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), the Supreme Court rejected the proposition that state court product liability actions could properly be removed to federal court under federal "arising under" jurisdiction, notwithstanding that the suits "alleged that the drug Bendectin was 'misbranded' in violation of the Federal Food, Drug, and Cosmetic Act" ("FDCA"), alleged that the violation of the FDCA created a "'rebuttable presumption of negligence,'" and alleged that "the 'violation of said federal statut[e] directly and proximately cause the injuries suffered' by the two infant"-plaintiffs. *Id.* at 805-06 (quoting allegations in the product liability suits). As a result, the Supreme Court held, the cases should be remanded to state court, as they could not properly be removed to federal court. *Id.* at 807.

In reaching this result, the Supreme Court counseled that the "vast majority of cases brought under the general federal-question" (or "arising under") jurisdiction of the federal courts "are those in which federal law creates the cause of action." *Id.* at 808 (discussing *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257 (1916) (Holmes, J.)). *Merrell Dow* further

8

added that, in some instances, "a case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law.'" *Id.*, 478 at 808-09 (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)). Nonetheless, the Supreme Court counseled, the "actual holding in *Franchise Tax Board* demonstrates that this statement must be read with caution; the central issue presented in that case turned on the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, but we nevertheless concluded that federal jurisdiction was lacking." *Merrell Dow*, 478 U.S. at 809 (discussing *Franchise Tax Board, supra*). The Supreme Court emphasized that courts must use "prudence and restraint" in determining when federal jurisdiction is appropriate where the vindication of a state right involves a construction or interpretation of federal law, *id.* at 810, and stated that federal jurisdiction is appropriate only where the federal questions are "[s]ufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814; *see also id.* at 813 (discussing the "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"). In concluding that federal jurisdiction was not appropriate in the *Merrell Dow* case itself, the Supreme Court noted, *inter alia*, that the products liability actions at issue involved "a subject traditionally relegated to state law," and that "a federal cause of action would not further the underlying purposes of the legislative scheme." *Id.* at 811.

There are numerous decisions applying *Merrell Dow* which rejected assertions that attorney malpractice and/or other state law actions concerning underlying federal litigation could properly be removed to, or litigated in, federal court under the "arising under" or "federal question" grant of subject matter jurisdiction. Plaintiff has identified one of those cases, *Custer*

*v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996).

*Custer* held that a district court properly found no federal jurisdiction, and instead properly sent to state court, a suit in which the plaintiff, a trustee of and participant in an ERISA-regulated pension plan, sued the plan's attorneys and alleged, among other things, legal malpractice regarding the provision of advice concerning ERISA law. *Id.*, 89 F.3d at 1160, 1167-68. In so holding, *Custer* rejected the claim that the legal malpractice suit arose under federal law simply "because its resolution require[d] the interpretation of substantial ERISA issues." *Id.* at 1164. Applying *Merrell Dow*, *Custer* held that the legal malpractice claim was a creature of state law, that the suit did not implicate federal interests that Congress sought to promote in enacting ERISA, and that any federal questions at issue were not sufficiently substantial under *Merrell Dow* so as to confer "arising under" federal subject matter jurisdiction. *Id.* at 1168-69. *Custer* further rejected the argument that ERISA preempted common law malpractice actions concerning the provision of legal advice about the ERISA statute. *See, e.g., id.* at 1167 ("A presumption that ERISA does not preempt legal malpractice claims arises because the law governing legal malpractice represents a traditional exercise of state authority"); *id.* ("We are especially wary of finding ERISA preemption in this case because the logic of such a holding would sweep into federal court a wide range of professional malpractice claims, like Custer's, that allege the provision of negligent advice about the requirements of federal law.").

*Custer* is not a unique precedent. There is, simply put, a plethora of attorney and/or professional malpractice cases concerning underlying federal litigation, in which the cases have been remanded to state court for adjudication or dismissed for lack of federal subject matter jurisdiction. For example, *Diaz v. Sheppard*, 85 F.3d 1502 (11th Cir. 1996), reversed a district

court ruling that an attorney malpractice case, which concerned underlying federal court constitutional/prisoner rights litigation, could properly be adjudicated in federal court. *Id.* at 1503. The prisoner-plaintiff in the malpractice case claimed that the defendant-attorney had negligently assessed a body of Eighth Amendment caselaw concerning the obligations of prison administrators, which the Eleventh Circuit described as an alleged "mistake about the legal strength of the prisoners' claim." *Id.* at 1504. The prisoner-plaintiff also alleged that the defendant-attorney had made a "mistake about the evidentiary strength of the prisoners' claim." *Id.* Applying *Merrell Dow*, the Eleventh Circuit noted that "the 'mere presence of a federal issue in a state cause of action does not automatically confer federal-court jurisdiction.'" *Id.* at 1505 (quoting *Merrell Dow*, 478 U.S. at 813). The Eleventh Circuit further held that whether the attorney in the underlying federal litigation "misread or disregarded federal law in such an unreasonable way so as to constitute legal malpractice in Florida is ultimately a question of state law." *Id.* (collecting authorities). As a result, the Eleventh Circuit held, federal jurisdiction was "lacking." *Id.*

Similarly, in *Berg v. Leason*, 32 F.3d 422 (9th Cir. 1994), Judge Rymer, writing for a unanimous panel, reversed a district court ruling and held that a removed case involving a state law malicious prosecution claim—for which an element of the claim was establishing that an underlying federal securities and civil RICO suit was legally untenable—could not properly be removed to federal court. *Id.* at 423. This result was again based on application of *Merrell Dow*. *Id.* at 423-24 (citing *Merrell Dow, supra*). *Berg* noted that the state courts would not necessarily need to resolve questions of federal law, but rather would be required to address the related but looser state law question of whether the assertion of the underlying federal legal suit was

11

"'legally tenable.'" *Id.*, 32 F.3d at 425 (quoting standard from California law; citations omitted).

*Berg* further stated that

> Normally, as Justice Holmes put it, "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Bowler Co.*, 242 U.S. 257 (1916); *see also Merrell Dow*, 478 U.S. at 808. The cause of action for malicious prosecution is of course a creature of state law. State law controls the other elements which must be proved, as well as what suffices for probable cause. Thus, in California, the probable cause inquiry has two components, one factual and one legal. Before reaching the question of whether the underlying action was legally tenable, the factfinder must determine what the defendant knew or believed about the facts. Neither the factual part of the probable cause element, nor the separate question of malice, turns at all on federal law.
>
> Finally, the court looks at the merits of a claim for malicious prosecution through the prism of state law. [. . . .] [F]ederal law cannot be controlling when the degree of substance in the federal claim necessary to trigger the state-law cause of action is a question of state law. Likewise here, federal law is not dispositive because the degree of strength required to put the underlying federal claim over the probable cause threshold is determined by state law.

*Id.*, 32 F.3d at 425 (certain internal citations omitted). *Berg* further rejected the assertion that removal was necessary in order to ensure that federal law was properly interpreted—with *Berg* noting that state courts regularly interpret federal law in the context of non-removable cases, concerning issues such as federal preemption, or affirmative defenses based on federal law. *Id.* at 426; *see also id.* ("A state court can decide as competently as can a federal court whether the threshold of a 'legally tenable' claim existed.").

This body of federal precedent counseling in favor of remand is not limited to appellate cases. For example, *Pickens v. Gardner*, No. 4:03 CV 40477, 2003 WL 22888957 (S.D. Iowa Dec. 3, 2003), dismissed for lack of subject matter jurisdiction an attorney malpractice case concerning the defendant-attorney's efforts in an underlying employment discrimination action brought under the ADA. *Id.* at *1. Rejecting the plaintiff's argument that federal question

12

jurisdiction was present because "a necessary element of his malpractice claim is the merits of his underlying ADA case," *id.* at *2, Pickens held that the jurisdictional argument failed under *Merrell Dow* and therefore the case could not proceed in federal (as opposed to state) court. *Id.* at *3. A number of federal cases have rejected contentions that claims of attorney malpractice concerning underlying federal criminal prosecutions—where all of the legal questions either are questions of federal constitutional or statutory law[1]—could properly proceed in federal court. *See, e.g., McGraw v. Thomas*, No 4:97CV00183, 1999 WL 1939260, *3 (M.D.N.C. Feb. 4, 1999) (applying *Merrell Dow* and remanding attorney malpractice case concerning underlying federal criminal case to state court); *id.* ("[I]t is clear that a claim does not arise under federal law simply because one of the elements of the state law claim involves a determination of whether federal law was violated") (citing *Merrell Dow*, 478 U.S. at 813, and collecting numerous other cases); *Chaverra-Cardona v. Schultz*, No. 88 C 8393, 1989 WL 15930, *1 (N.D. Ill. Feb. 21, 1989) (Kocoras, J.) (dismissing attorney malpractice action concerning underlying federal criminal case for lack of federal subject matter jurisdiction and stating, *inter alia*, that "only the Illinois courts have jurisdiction to entertain his claims"); *Williams v. Dickenson*, No. 97 C 1631, 1997 WL 208408, *1 (N.D. Ill. Apr. 23, 1997) (Shadur, J.) (dismissing attorney-malpractice suit concerning underlying federal criminal case for want of jurisdiction and stating that the suit was "cognizable only by a *state* court and not by this federal court") (emphasis in original). Finally, in this regard, *Sheridan v. New Vista, L.L.C.*, 406 F. Supp. 2d 789 (W.D. Mich. 2005), remanded

---

[1] In rare instances, federal criminal prosecutions involve the interpretation of state law—for example, where state law offenses are charged as RICO predicates in a federal criminal RICO prosecution. Nonetheless, in most federal criminal cases, all of the legal issues are federal ones, and even in the rare exceptions, the vast majority of legal issues are federal as opposed to state law ones.

13

to state court a case that alleged various state law claims against the defendant/investment advisors, including professional malpractice, where the alleged negligence was failure to appreciate allegedly obvious objections of the IRS under federal tax laws to various investment vehicles later deemed problematic by the IRS. *Id.* at 790-91. *Sheridan* rejected the contention that the alleged presence of disputed issues of federal tax law in the malpractice case made federal subject matter appropriate. *Id.* at 791. Applying *Merrell Dow*, among other cases, *Sheridan* noted that common law negligence and professional malpractice claims are the traditional substance of the state courts, and *Sheridan* held that "Plaintiffs' claims arise under state law, and the fact that those claims may present questions of federal tax law is not sufficient to present a substantial federal question." *Id.* at 793, 795-96.

All of this caselaw supports remand in the instant case. Defendant cites no contrary holdings, and in fact fails to cite a single case holding that the assertion of federal question jurisdiction for a professional malpractice action was appropriate.[2]

At the end of the day, this case is not materially distinguishable from the wealth of precedent discussed above. To be sure, if the state courts were to agree that the Seventh Circuit's settled teaching concerning the definition of "supervisor" in Title VII law is perfect, then, by

---

[2] Although not material to the Court's bottom-line result, the Court notes that remanding the case to state court is consistent with more general precedent which holds that state courts have concurrent jurisdiction over Title VII cases in their entirety. *See, e.g., Yellow Freight Sys. Inc. v. Donnelly*, 494 U.S. 820, 821 (1990). Such precedent means that even the most fundamental of Title VII questions can be resolved by state courts, with the Supreme Court available to reconcile any certiorari-worthy federal questions that might arise. *Accord Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 816 & n.14 (1986). Furthermore, as the Seventh Circuit explained in the case which was affirmed by the Supreme Court in the *Yellow Freight* decision, "there is no reason to presume state courts are not competent to adjudicate these issues." *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 408 (7th Cir. 1989), *aff'd by Yellow Freight*, 494 U.S. at 821.

14

definition, no attorney malpractice could have occurred. However, the case will actually be litigated concerning a distinct and materially different issue: namely, whether Higbee's trial counsel failed to exercise "a reasonable degree of care and skill," as that term is defined by Illinois law, in failing to object to a jury instruction concerning "supervisor" that reflected established and extant Seventh Circuit law. *See, e.g., Smiley v. Manchester Ins. & Indemnity Co of St. Louis*, 375 N.E.2d 118, 122 (Ill. 1978) (articulating standard for attorney malpractice under Illinois law). In this regard, Illinois negligence law further counsels that an "attorney is not liable for mere errors of judgment." *Id.* Even looking at this narrow question of law (*i.e.*, would such an alleged misdeed be a "mere error of judgment," or an error so grave as to exhibit a lack of "a reasonable degree of care and skill")—which analysis maximizes the chances of finding that the case could proceed legitimately via removal in federal court—the legal issue is one delimited and animated by state law. *Accord, e.g., Diaz*, 85 F.3d at 1505; *Berg*, 32 F.3d at 425; *McGraw*, 1999 WL 1939260 at *3. Moreover, analysis of the question does not fundamentally turn on jurisprudential debates about Title VII, but rather turns on answering the more pedestrian attorney-practice question of whether it is a "failure to exercise a reasonable degree of care" (as that term is understood in Illinois law) to not object to a jury instruction that accurately reflected settled appellate law.

In addition, the actual litigation of the attorney malpractice case will involve a variety of other issues, both factual and legal, under Illinois law. *See, e.g., Berg*, 32 F.3d at 425. For example, the Court's review of the record at least suggests that the testimony of the employees of defendant-Sentry was consistent with the Seventh Circuit's definition of "supervisor" for the putative harasser. *Accord Higbee v. Sentry*, No. 97 C 1349 (N.D. Ill.), D.E. 92 at 7 (Judge

15

Kennelly's opinion denying summary judgment on such ground based on testimony of defendant-employer's own employees) (citing *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002)). To the extent the trial record reflects such a fact, it would strongly suggest that the adverse verdict against Higbee likely reflected a jury-rejection of her accusations—which she apparently had not made at the time of the alleged harassment (D.E. 92 at 2-3 (explaining that Higbee reported alleged harassment in late October 1994, which was months or years after at least most of it supposedly occurred))—in favor of the steadfast denials of her alleged harasser that he had not groped Higbee's breast on three occasions. (*Id.* at 4.) While the state court litigation will ultimately resolve such questions, to the extent that the real dispute reflected in the factual record concerning the underlying employment case is one of witness-credibility (*i.e.*, Higbee vs. her putative harasser), any supposed malpractice concerning the definition of "supervisor" in the jury instructions will be functionally irrelevant. *See, e.g., Berg*, 32 F.3d at 425. All of this reinforces the conclusion that remand is appropriate, as the case as presented does not appear to present the requisite "substantial" disputed question of federal law to confer "arising under" subject matter jurisdiction in this district court. *See Merrell Dow*, 478 U.S. at 813.

In sum, precedent supports the remand of this case, as Plaintiff contends. Like the numerous malpractice and other relevant cases discussed above, this malpractice case should proceed, as virtually all do (*i.e.*, at least those without the diversity jurisdiction of the federal courts) in state court. That means the case should proceed in the Circuit Court of Cook County, Illinois, and Plaintiff's remand motion is accordingly granted.

## CONCLUSION

For the reasons stated above, the Court grants Plaintiff Higbee's motion to remand this attorney malpractice case to the Circuit Court of Cook County. (D.E. 15.)

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 1-11-07